UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PEKIN INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:06-cv-0961-TAB-DFH |
| ) | |
| MAIN ST. CONS'T., INC., and LYNCH, ) | |
| HARRISON & BRUMLEVE, INC., ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.   Introduction.**

In the summer of 2004, three of Defendant Main Street Construction, Inc.'s employees were injured while working on a roofing project in Carmel, Indiana. They subsequently filed a personal injury lawsuit in Indiana state court against four defendants including Defendant Lynch, Harrison & Brumleve Inc. ("LHB").[1] In response, LHB filed a third-party complaint against Main Street claiming that Main Street was negligent and thus obligated to indemnify LHB for any judgment against LHB as a result of the underlying personal injury action.

Main Street requested that its insurance carrier, Plaintiff Pekin Insurance Company, defend and indemnify it against LHB's third-party complaint. Pekin denies it has any such duties. Accordingly, Pekin filed this declaratory judgment action to clarify its obligations to Main Street under Pekin's policies. Pekin now moves for summary judgment against all Defendants. [Docket Nos. 24-25.] For the reasons below, the Court grants Pekin's motion.

---

[1] That action reportedly remains pending in Hamilton County Superior Court.

## II. Legal Standards.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The parties concur that the Court, pursuant to diversity jurisdiction, "must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). "Under Indiana law, the interpretation of an insurance contract is a matter of law for the courts to determine." *Schenkel & Shultz, Inc. v. Homestead Ins. Co.*, 119 F.3d 548, 550 (7th Cir. 1997), *citing Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992). Therefore, summary judgment is "particularly appropriate" in this type of action. *American Family Mut. Ins. Co. v. Hall*, 764 N.E.2d 780, 784 (Ind. Ct. App. 2002).

## III. Background.[2]

### A. The project.

In December 2001, Sagamore Club LLC contracted with Ratio Architects, Inc. to provide professional architectural and engineering services for the Sagamore Golf Clubhouse located in Hamilton County, Indiana (the "project"). This project consisted generally of schematic design, design development, construction documents preparation, bidding phase assistance, and construction contract administration. [3rd Party Compl. at ¶¶ 3-4.] In February 2002, Ratio

---

[2] Main Street accepts Pekin's statement of material facts without challenge and does not offer any additional material facts. [Docket No. 30 at p. 2.] As a result, these background facts are as presented by Pekin in its opening brief.

engaged LHB as its consultant to provide specified structural engineering services for the project. [*Id*. at ¶ 5; 1st Am. Compl. at ¶ 6.] Two years later, Sagamore retained Wurster Construction Co. Inc. to serve as the general contractor. [3rd Party Compl. at ¶ 6; 1st Am. Compl. at ¶ 2.] Wurster subcontracted Main Street to install and erect all wood trusses and other materials and components comprising the project's wood roofing system. [3rd Party Compl. at ¶ 7.] The subcontract between Wurster and Main Street contained the following indemnification and hold harmless provisions:

> To the fullest extent permitted by law, [Main Street] shall indemnify and hold harmless Owner, [Wurster], [Ratio], [LHB], and agents and employees of any of them from and against claim, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of [Main Street's] Work under this Subcontract, but only to the extent caused by the negligent acts or omissions of [Main Street], [Main Street's] Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

[*Id.*]

### B. Facts giving rise to the underlying liability claim.

In August 2004, three Main Street employees Mark Hawkins, John Adams, and Mike Carlisle were working on the project. Hawkins and Adams were working off the ground on the trusses. Carlisle was working on the ground beneath the trusses. [3rd Party Compl. at ¶ 8; 1st Am. Compl. at ¶¶ 1, 7.] When a girder beam broke, Hawkins and Adams fell to the ground. A substantial part of the truss system then collapsed on top of and injured Hawkins, Adams, and Carlisle. [3rd Party Compl. at ¶ 8; 1st Am. Compl. at ¶¶ 8, 15.] These employees subsequently filed suit against LHB, Ratio, and Wurster seeking monetary recovery for their injuries. They

contend that these injuries were due to a failure and collapse of the wood trusses that Main Street installed in furtherance of its subcontract with Wurster. [1st Am. Compl. at ¶¶ 8, 15.] Main Street's injured employees further allege that LHB's professional negligence caused the girder beam and truss system to collapse. [1st Amended Compl at ¶ 14.] LHB responded to the state action in part by filing a third-party complaint against Main Street. In its third-party complaint, LHB alleges that Main Street's negligence resulted in the beam and system failure, and thus, that Main Street is obligated to indemnify or defend LHB. [3rd Party Compl. at ¶¶ 8-10.]

      **C.**      **Relevant insurance policies.**

Upon service of LHB's third-party complaint, Main Street requested that its insurance carrier Pekin defend and indemnify it pursuant to Pekin's commercial lines policy ("primary policy") and commercial umbrella policy ("umbrella policy") issued to Main Street.[3] [Jason Law Aff. at ¶ 6.] Pekin disclaimed any duty under the policies to defend and indemnify Main Street against LHB's third party complaint.[4] [*Id*. at ¶¶ 12-13.]

The primary policy included commercial general liability ("CGL") coverage. As such, the CGL covered "bodily injury and property damage liability." [Primary Policy, Form CG 00 01 10 93 at p 1.] Under its umbrella policy, Pekin agreed to pay

> 'ultimate net loss' in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of 'injury' caused by an 'occurrence' to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

---

[3] For ease of reference, the Court refers to these two policies collectively as "the policies."

[4] It is undisputed that these policies were in effect at the time of the incident involving Main Street's employees.

4

The umbrella policy further provided that "the 'injury' must be caused by an 'occurrence' within the 'coverage territory.' 'Bodily injury' and 'property damage' must occur during the policy period. 'Personal injury' and 'advertising injury' must be caused by an 'occurrence' during the policy period." [Umbrella Policy, Form CU 00 01 05 03 at p. 1.]

Both policies contained "employer's liability" and "contractual liability" exclusions that in relevant part were the same. Under the "employer's liability" exclusion, the policies did not apply to bodily injury to "[a]n employee of the insured arising out of and in the course of employment by the insured" unless the liability is "assumed by the insured under an 'insured contract' . . . ." [Primary Policy, Form CG 00 01 10 93 at p. 1; Umbrella Policy, Form CU 00 01 05 03 at p. 1.] These exclusions applied: "(1) Whether the insured may be liable as an employer or in any other capacity; and (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury." [Primary Policy, Form CG 00 01 10 93 at pp. 1-2; Umbrella Policy, Form CU 00 01 05 03 at p. 1.] Pursuant to the "contractual liability" exclusions, coverage did not apply to "'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement" unless the liability for damages is "[a]ssumed in a contract or agreement that is an "insured contract . . . ." [Primary Policy, Form CG 00 01 10 93 at p. 1; Umbrella Policy, Form CU 00 01 05 03 at pp. 1-2.]

These policies defined "insured contract," in relevant part, as "that part of any other contract or agreement pertaining to your business" "under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person

5

or organization." They both provided that "[t]ort liability means a liability that would be imposed by law in the absence of any contract or agreement." [Primary Policy, Form CG 00 01 10 93 at pp. 8-9; Umbrella Policy, Form CU 00 01 05 03 at p. 7.] Both excluded from their definitions of "insured contract" that part of any contract or agreement "[t]hat indemnifies an architect, engineer or surveyor for injury or damage arising out of: (1) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications; or (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage." [*Id.*]

**IV.    Discussion.**

The record in this matter is undisputed. Thus, the Court must discern whether as a matter of law Pekin is entitled to a declaration that it has no duty to defend or indemnify Main Street against LHB's third-party complaint. The resolution of this matter turns in part on whether an actual controversy before the Court within the meaning of the Declaratory Judgment Act exists. *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."). An actual controversy exists when "there is a controversy between parties with adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Metal Working Lubricants Co. v. United States Fire Ins. Co.*, 460 F. Supp. 2d 897, 900 (S.D. Ind. 2006)(internal citation omitted).

In Indiana, "insurance contracts are subject to the same rules of construction as are other contracts." *Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143, 146 (Ind. Ct. App. 2006). Any ambiguities in contract language are construed in favor of the insured, but "clear and

unambiguous policy language must be given its ordinary meaning." *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997).

Specific to the duties at issue here, Indiana law provides that "an insurer's duty to defend is broader than its duty to indemnify." *Walton,* 844 N.E.2d at 146. It is axiomatic that an insurer who has no duty to defend has no duty to indemnify its insured either. *United Nat. Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992). "Conversely, where there is a duty to defend, the duty to indemnify must await resolution of the underlying suits." *Id*. *See also Metal Working Lubricants Co.*, 460 F. Supp. 2d at 900-01 ("This is the rule because a declaration regarding the duty to indemnify may have no real-world impact if no liability arises in the underlying litigation."). Accordingly, the Court will first examine Pekin's duty to defend.

**A.    Pekin's duty to defend.**

An insurer has a duty to defend its insured whenever the "allegations of the complaint, including the facts alleged . . . if proved true," would allow for coverage. *Federal Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997) (interpreting and applying Indiana law). Where an insurer demonstrates that a claim is unequivocally excluded under the policy, it has no duty to defend. *Wayne Twp. Bd. of Sch. Com'rs v. Indiana Ins. Co.*, 650 N.E. 2d 1205, 1208 (Ind. Ct. App. 1995).

Pekin contends that it has no duty to defend because the allegations of the underlying complaint fall within the policies' employer and contractual liability exclusions without exception. [Docket No. 27 at pp. 16-25.] Main Street focuses its challenge to Pekin's summary judgment motion on arguments related to the duty to indemnify, and does not respond to Pekin's contention that it has no duty to defend in any principled way discernable to the Court. [Docket

No. 30.] Nonetheless, the Court will assess whether Pekin has demonstrated that Main Street's claims are clearly excluded under the policies.

Were it not for the definition of "insured contract" in the exceptions to the employer's and contractual liability exclusions found in both policies, these exclusions would not necessarily support Pekin's position that it has no duty to defend Main Street. [Primary Policy, Form CG 00 01 10 93 at p. 1; Umbrella Policy, Form CU 00 01 05 03 at pp. 1-2.] This is because both exclusions contain a crucial exception concerning "insured contract" that might seemingly negate any exclusions' applicability to LHB's claims against Main Street. Thus, this dispute boils down to whether Pekin can establish that LHB's claims fall beyond the definition of "insured contract."

In assessing whether Pekin has shown such, the Court first notes that LHB's third-party complaint against Main Street alleges that Main Street is obligated to "indemnify and hold LHB harmless from and against all claims, damages, losses and expenses" that may result from Main Street's employees' state court personal injury action against LHB. [3rd Party Compl. at ¶¶ 8-10.] In this respect, the allegations of the underlying personal injury complaint and LHB's third-party complaint are necessarily intertwined and must be equally examined. Main Street's employees allege that LHB, as Ratio's structural engineering consultant, developed the performance criteria for the failed trusses. [1st Am. Compl. at ¶ 15.] They further contend that LHB negligently designed, drew, engineered, and developed the performance criteria for the roof truss system. [*Id.*]

If these allegations are proved true, they would not allow for coverage under Pekin's policies to Main Street because the policies exclude from "insured contracts" that part of any contract or agreement "[t]hat indemnifies an architect, engineer or surveyor for injury or damage

arising out of: (1) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications; or (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage." [Primary Policy, Form CG 00 01 10 93 at pp. 8-9; Umbrella Policy, Form CU 00 01 05 03 at p. 7.]  The parties do not point to any ambiguity in this contract language, nor can the Court find any.  *See Gallant Ins. Co. v. Oswalt,* 762 N.E. 2d 1254, 1262-63 (Ind. Ct. App. 2002) ("A contract will be found to be ambiguous only when it is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning.").

Under the "employer's liability" exclusion, the policies did not apply to bodily injury to "[a]n employee of the insured arising out of and in the course of employment by the insured" [Primary Policy, Form CG 00 01 10 93 at p. 1; Umbrella Policy, Form CU 00 01 05 03 at p. 1.] These exclusions applied: "(1) Whether the insured may be liable as an employer or in any other capacity; and (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury." [Primary Policy, Form CG 00 01 10 93 at pp. 1-2; Umbrella Policy, Form CU 00 01 05 03 at p. 1.]  Pursuant to the "contractual liability" exclusions, coverage did not apply to "'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement . . . ."  [Primary Policy, Form CG 00 01 10 93 at p. 1; Umbrella Policy, Form CU 00 01 05 03 at pp. 1-2.] Thus, without exception, the policies' employer's and contractual liability exclusions preclude coverage for the exposure to liability that prompted LHB's third-party complaint against Main Street.  Consequently, Pekin has no duty to defend Main Street against LHB's third-party complaint.  As addressed previously, Pekin therefore has no legal duty to indemnify Main Street

with respect to LHB's third-party complaint either.

**V.      Conclusion.**

Having found Main Street has no duty to defend against LHB's third-party complaint, the Court likewise finds that Pekin has no duty to indemnify Main Street should liability affix against Main Street as a result of LHB's third-party complaint.  Thus, as a matter of law, Pekin is entitled to summary judgment on its declaratory judgment action seeking clarification of its duties to Main Street.  Accordingly, the Court grants Pekin's motion for summary judgment [Docket No. 24].  Judgment shall be entered accordingly.

Dated:  06/01/2007

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies:

Patrick F. Mastrian III
pmastrian@brown-tompkins-lory.com

Mark R. Smith
SMITH FISHER MAAS & HOWARD
msmith@smithfisher.com